Youssef H. Hammoud (SBN: 321934)
E: youssef@pricelawgroup.com
**PRICE LAW GROUP, APC**
6345 Balboa Blvd., Suite 247
Encino, CA 91316
T: (818) 600-5596
F: (818) 600-5596

*Attorneys for Plaintiff,*
*Dolores Ronquillo*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### (WESTERN DIVISION)

| | |
|---|---|
| DOLORES RONQUILLO,<br><br>    Plaintiff,<br><br>v.<br><br>EQUIFAX INFORMATION SERVICES, LLC; EXPERIAN INFORMATION SOLUTIONS, INC.; TRANS UNION LLC; SOFI LENDING CORP.; SOFI BANK, N.A.; UNITED COLLECTION BUREAU, INC.; LVNV FUNDING LLC; and RESURGENT CAPITAL SERVICES, L.P.,<br><br>    Defendants. | **Case No.: 2:23-cv-00065**<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>1. **FCRA, 15 USC § 1681** *et seq.*<br>2. **FDCPA, 15 U.S.C. § 1692** *et seq.*<br>3. **CCCRA, Cal. Civ. Code §1785.25** *et seq.*<br>4. **RFDCPA, Cal. Civ. Code § 1788** *et seq.* |

Plaintiff Dolores Ronquillo ("Plaintiff") alleges the following violations of federal and California consumer protection statutes against Defendants Equifax

Information Services, LLC ("Equifax"); Experian Information Solutions, Inc. ("Experian"); Trans Union LLC ("Trans Union") (referenced collectively as "CRA Defendants"); SoFi Lending Corp., and SoFi Bank, N.A. (collectively "SoFi"); United Collection Bureau, Inc. ("United Collection"); LVNV Funding, LLC ("LVNV"); and Resurgent Capital Services, L.P. ("Resurgent").

## PRELIMINARY STATEMENT

1.     This complaint is based on violations of the:

    a.     Fair Credit Reporting Act (FCRA), 15 U.S.C. §1681 *et seq.* against CRA Defendants and SoFi;

    b.     Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 *et seq.* against United Collection Bureau, Inc., LVNV Funding, and Resurgent;

    c.     California Consumer Credit Reporting Agencies Act (CCCRA), Cal. Civ. Code §1785.25 against CRA Defendants and SoFi;

    d.     Rosenthal Fair Debt Collection Practices Act (RFDCPA), Cal. Civ. Code § 1788 against SoFi, United Collection Bureau, Inc., LVNV Funding, and Resurgent.

## JURISDICTION AND VENUE

2.     The court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

3.     Venue is proper pursuant to 28 U.S.C. 1391(b)(2) in that a substantial part of all Defendants' conduct, including omissions, giving rise to the claims occurred in this District and Division.

4.     Defendants all have substantial contacts and/or transact business in this District and Division; therefore, personal jurisdiction is established.

## **PARTIES**

5.     Plaintiff is a natural person residing in Carson, Los Angeles County, California. She is a "person" as defined under the Rosenthal Act, Cal. Civ. Code. § 1788.2(g).

6.     Plaintiff is a "consumer" as defined by the FCRA, 15 U.S.C. § 1681a(c), the FDCPA, 15 U.S.C. § 1692a(c), and Cal. Civ. Code § 1785.3(b).

7.     Defendant Experian is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f)).  On information and belief, Experian is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 USC 1681a(d), to third parties. Experian's principal place of business is located at 475 Anton Boulevard, Costa Mesa, California 92626.

8.     Defendant Equifax is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f). Upon information and belief, Equifax is regularly engaged in the business of assembling, evaluating, and disbursing information concerning

consumers in the form of consumer reports, as defined in 15 U.S.C. § 1681a(d)), to third parties. Equifax's principal place of business is located at 1550 Peachtree Street NW, Atlanta, GA 30309. Equifax can be served through its registered agent, Corporation Service Company, located at 2 Sun Court, Suite 400, Peachtree Corners, GA 30092.

9.      Defendant Trans Union is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f)). On information and belief, Trans Union is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 USC 1681a(d), to third parties. Trans Union's principal place of business is located at 555 West Adams Street, Chicago, Illinois 60661. Trans Union can be served at their Registered Agent Illinois Corporation Service Company at 801 Adlai Stevenson Drive, Springfield, Illinois 62703.

10.      Defendant SoFi Bank, N.A. is a financial institution engaged in the business of giving credit and collecting debt.

11.      SoFi is also a "furnisher," as contemplated by 15 U.S.C. § 1681s-2.

12.      Upon information and belief, SoFi is regularly engaged in the business of furnishing credit information to the consumer reporting agencies.

13.      SoFi Lending Corp. does business as "SoFi." It is a California corporation with its principal offices at 2750 E Cottonwood Parkway, Suite 300,

4

Cottonwood Heights, UT, 84121 and at 234 1st Street in San Francisco, California. SoFi Lending Corp. is a wholly owned subsidiary of Social Finance, Inc., a Delaware Corporation with is principal office in San Francisco, CA.

14.     SoFi Lending Corp. is a non-bank loan originator and loan servicer, according to its parent company, SoFi Technologies, most recent SEC-filed 10-K.

15.     SoFi Lending Corp. can be served at its registered agent Corporation Service Company, 2710 Gateway Oaks Dr. Suite 150N, Sacramento, CA 95833.

16.      SoFi Bank, N.A., was formerly known as Golden Pacific Bank, N.A., a subsidiary of Golden Pacific Bancorp, Inc., until its acquisition by SoFi Technologies, Inc., in February of 2022.

17.     Once the merger was complete and the acquisition of a national bank charter realized, SoFi Technologies began to migrate certain of its products from its non-bank lending and servicing entities such as SoFi Money, SoFi Lending, SoFi Credit Card products, to SoFi Bank.

18.     Upon information and belief, upon completion of the merger, not only did SoFi Technologies transfer products, but it also transferred accounts to SoFi Bank, such as the Account that it illegally and falsely strapped on the Plaintiff.

19.     SoFi Bank has principal places of business at 2750 E Cottonwood Parkway, Suite 300, Cottonwood Heights, UT, 84121 and 234 1st Street in San Francisco, California, with offices in Delaware, Florida, Montana, New York,

Texas, Utah, Virginia, and Washington.

20.     SoFi Bank can be served at 2750 E. Cottonwood Pkwy, Suite 300, Salt Lake City, UT 84121.

21.     SoFi Lending Corp. and SoFi Bank are owned by the same parent company, with the same officers and directors, and have the same principal places of business.

22.     Defendant United Collection Bureau, Inc. is an Ohio corporation that regularly conducts business in California on a routine and systematic basis. Defendant United Collection Bureau, Inc. is in the business of contacting consumers to collect consumer debt. Defendant United Collection Bureau, Inc. has a principal place of business at 5620 Southwyck Blvd., Toledo OH 43614.  It can be served at its registered agent Corporation Service Company, which will do business as CSC – Lawyers Incorporating Service, located at 2710 Gateway Oaks Dr. Suite 150N, Sacramento, CA 95833.

23.     Defendant LVNV Funding is a foreign corporation that regularly conducts business in California on a routine and systematic basis. Defendant LVNV Funding is in the business of contacting consumers to collect consumer debt. Defendant LVNV Funding is a Delaware limited liability corporation with a principal place of business at 6801 S. Cimmaron Rd., Suite 424-J, Las Vegas, NV 89113. It can be served at its registered agent, Corporation Service Company which

will do business in California as CSC – Lawyers Incorporating Service, located at 2710 Gateway Oaks Dr. Suite 150N, Sacramento, CA 95833.

24.    Defendant Resurgent Capital Services is a Delaware corporation that regularly conducts business in California on a routine and systematic basis. Defendant Resurgent Capital Services is in the business of contacting consumers to collect consumer debt. Defendant Resurgent Capital Services has a principal place of business in Greenville, South Carolina.  It can be served at its registered agent, Corporation Service Company, which will do be business in California as CSC-Lawyers, located at 2710 Gateway Oaks Dr. Suite 150N, Sacramento, CA 95833.

25.    Defendants United Collection, LVNV Funding, and Resurgent (collectively "Debt Collectors") regularly collect or attempt to collect debts owed or due or asserted to be owed or due another and is therefore a "debt collector" within the meaning of the FDCPA, as defined at 15 U.S.C. § 1692a(6). Defendants regularly use the telephone and mail to engage in the business of collecting debts and/or alleged debts from consumers in California.

26.    Any violations by Defendants as set forth in this Complaint were knowing and intentional, and Defendants did not maintain procedures reasonably adapted to avoid any such violations.

27.    During all times pertinent to this Complaint, Defendants acted through their agents, employees, officers, members, directors, heirs, successors, assigns,

principals, trustees, sureties, subrogees, representatives, and insurers.

## **FACTUAL ALLEGATIONS**

28.     Plaintiff was a victim of identity theft, which she only learned about when SoFi Lending Corp. and/or SoFi Bank began contacting Plaintiff to collect a delinquent personal loan (the "Account") that it falsely claimed was opened by the Plaintiff

29.     The fraudulent Account was opened in or around October of 2021.

30.     No payments were ever made on the Account.

31.     The Plaintiff explained to SoFi that she did not take out a $45,000 personal loan, but SoFi nonetheless falsely reported the debt to consumer reporting agencies and attempted to collect on the fraudulent Account.

32.     In or around February of 2022, Plaintiff learned that her consumer reports from Trans Union, Equifax, and Experian, were reporting the Account as belonging to her, as delinquent and in default.

33.     On or about March 4, 2022, Plaintiff contacted local law enforcement to make an incident report about the identity theft.

34.     The City of Los Angeles Sheriff's Department responded by taking the report and the Plaintiff's statement.

35.     Complete strangers had surreptitiously obtained enough information about the Plaintiff to contact SoFi Lending Corp. and take out a $45,000 unsecured

loan in the Plaintiff's name without her knowledge or authorization.

36.     Upon information and belief, SoFi Lending Corp., is a completely online, non-bank loan originator, which the identity thief knew and proceeded to defraud SoFi's technology-driven lending processes out of $45,000.00.

37.     Upon information and belief, at the time the fraudulent Account was opened, SoFi Lending Corp. marketed loans directly to consumers whose credit profiles met certain criteria using consumer information obtained from consumer reporting agencies and other data marketing companies.

38.     Upon information and belief, SoFi Lending Corp. used direct marketing to consumers meeting specific criteria including through electronic marketing communication as well as old-fashioned direct mail.

39.     Upon information and belief, SoFi uses a broad range of other media formats to market its products to consumers generally, including but not limited to digital ads, YouTube, TV, and even a football stadium naming-rights sponsorship in Inglewood, California.

40.     SoFi's lax lending policies allowed the imposter to use the Plaintiff's information to fraudulently obtain a $45,000 loan.

41.     SoFi did not communicate with the Plaintiff at the time the loan application was made, at the time the loan was originated, or anytime during the loan application process.

42.     Upon information and belief, SoFi has sophisticated technology at its disposal, which it could have used to prevent fraud or at least to protect itself, the Plaintiff, and other innocent consumers.

43.     SoFi did not obtain the most basic elements required by state or federal law to form a contract or encumber a consumer on a loan.

44.     Upon origination of the fraudulent Account, SoFi falsely reported the Account to all of the CRA Defendants as belonging to the Plaintiff.

45.     The Account immediately went into default because the fraudster never made a single payment upon receiving the amount of $45,000 from SoFi.

46.     Upon information and belief, when the Account defaulted, SoFi began placing collection calls to Plaintiff's phone regarding the Account and left voicemail messages.

47.     Upon information and belief, SoFi obtained Plaintiff's phone number through skip tracing processes.

48.     Upon information and belief, after default, the Account was assigned, transferred, or sold to a third-party debt buyer or debt collector.

49.     The Account was transferred to United Collection, which was collecting the debt for LVNV.

50.     Resurgent is another debt collector trying to collect the debt from Plaintiff for its customer LVNV.

51.     Upon information and belief, LVNV bought the debt from SoFi; SoFi was the originator of the debt.

### Trans Union's Illegal Conduct

52.     On or around March 7, 2022, Plaintiff sent a written dispute of the Account (#PL73XXXX) to Trans Union, which Account appeared on her Trans Union consumer report as delinquent and in default.

53.     On or around April 21, 2022, Plaintiff sent an identity theft claim and notarized Trans Union's Identity Theft Victim Assistance Affidavit to Trans Union.

54.     On or about May 3, 2022, Trans Union sent dispute results informing the Plaintiff that it had deleted the disputed SoFi Lending Corp. account.

55.     Within a few short days, on or around May 13, 2022, Trans Union sent a letter informing Plaintiff that now SoFi Bank reinserted the account that Trans Union had previously deleted.

56.     Not only had Trans Union reinserted the Account, but it was also reporting as a SoFi Bank account, delinquent 90 days, closed on April 20, 2022, past due and charged off in the amount of $47,488.

57.     The Account was added back into her Trans Union consumer report because it was verified by SoFi Bank as a Verified Accurate account.

58.     On or around June 1, 2022, Plaintiff's Trans Union consumer report was still reporting the Account as having a past due balance of $47,488, 90-days in

arrears, with $0 monthly payment with an "unpaid balance charged off" remark.

59.     On or around June 1, 2022, Plaintiff's Trans Union consumer report had a security/fraud alert added to her consumer report and had a security freeze and opted out of promotional inquiries.

60.     On or around June 7, 2022, Plaintiff submitted another dispute with Trans Union attaching a copy of her consumer report with the fraudulent items circled, a copy of her Identity Theft Report and proof of her identity as the substantive information.

61.     On or around July 6, 2022, Trans Union responded to Plaintiff and stated that the SoFi Bank Account was verified as Accurate. 59. On or around July 18, 2022, Plaintiff's Trans Union consumer report was still reporting the Account as belonging to the Plaintiff, $47,488 past due and charged off, 90-days in arrears, with $0 due monthly. Trans Union reported the account was "purchased by another lender."

62.     On or around July 26, 2022, Plaintiff sent another dispute to Trans Union regarding the identity theft and the unchanged Account that was still reporting on her consumer report. Trans Union has experience in other cases where SoFi had verified accounts that were opened due to identity theft and its lax policies and procedures.

63.     Trans Union had more than enough information, including the police

report and the notice from the consumer that the account did not belong to her, in addition the default on the unsecured loan, to be suspicious and to require more than a mere electronic certification to overcome the Plaintiff's dispute.

64.    Under the circumstances, Trans Union decision to merely parrot the information supplied by SoFi was unreasonable.

65.    To this day, Trans Union has not contacted the Plaintiff regarding her disputes, has not corrected the fraudulent account, and has refused to delete the Account.

66.    As a direct and proximate result of Trans Union's conduct, the Plaintiff has suffered injuries including but not limited to publication of the false information to third parties; publication of the Plaintiff's name and other identifying information in response to request from third parties; lost time and wages over one hour due to the time consuming nature of the dispute process in which she repeatedly engaged in an attempt to correct the false reports; damage to her creditworthiness and credit score; physical symptoms and sickness such as insomnia, nausea, headaches; she decided to remove herself from the credit market;  embarrassment that she didn't want others to find out about the inaccurate Trans Union reports; mental anguish worrying that she would never get her report fixed after the futility of disputing.

### Equifax's Illegal Conduct

67.    In or around February of 2022, Plaintiff disputed the fraudulent

Account with Equifax.

68.     On or around March 4, 2022, Equifax responded to Plaintiff's dispute regarding the Account.  Equifax's dispute results stated it had done a few things in response to her dispute: (1) it deleted the "explanation previously attached to this account"; (2) modified certain fields; (3) updated the number of months reviewed.

69.     The March 4, 2022, dispute results did not delete or correct the disputed Sofi Lending Corp. Account, but instead continued to report it on Plaintiff's Equifax report.  In addition to reporting a loan she never had, Equifax reported a balance of $45,000, 60-80 days past due, a date of first delinquency of 11/2021.

70.     The March 4, 2022, Equifax dispute results also contained additional information that the "consumer disputes – reinvestigation in progress" and "removes compliance condition codes." The additional remarks seem to indicate that the reinvestigation was not complete, but it is unclear the reason that it removed the compliance condition codes and what information would be transmitted to Plaintiff's creditors under such circumstances.

71.     If Equifax had not completed the reinvestigation, it should report the XB compliance condition code (CCC) as long as the reinvestigation has not concluded. Upon information and belief, furnishers normally provide the CCC.

72.     On or around March 28, 2022, Plaintiff sent another dispute letter to Equifax with additional information, o including about the identity theft and that the

14

application for the Sofi loan that was fraudulently made under her name, that it was not hers and therefore the Account (ending with 1757) was inaccurate.

73.     Along with her March 28, 2022, dispute to Equifax, she also sent a bill from Spectrum and the identity theft report and affidavit she made to the L.A. County Sheriff.

74.     On or around April 8, 2022, Plaintiff sent Equifax a dispute again explaining that the Account was not opened by her but a result of identity theft and attached Equifax's search request form.

75.     On or around April 16, 2022, Plaintiff received the response to her disputes from Equifax requesting more identifying information "because the information you provided as proof of your identity does not match the information, we currently have on your credit file."

76.     Upon information and belief, this April 16, 2022, was false because it had not only been able to access her consumer report and file previously to conduct a reinvestigation, but it had also sold her consumer report to numerous third parties.

77.     On or around April 30, 2022, Plaintiff sent another dispute to Equifax with the identifying information it requested including copies of her driver's license and Social Security Card.

78.     On or around May 10, 2022, Equifax sent Plaintiff what it claimed was a response to a request for her credit file dated May 7, 2022.  What Equifax actually

sent may have been styled, "Credit File," but it was nothing more than a disclosure, and it did not indicate that it was a response to the Plaintiff's dispute.

79.    However, the May 10, 2022, document entitled "Credit File" did not contain the disputed SoFi Account. For whatever reason, Equifax had deleted the fraudulent account.

80.    However, within a few short days, on or around May 18, 2022, Equifax responded to Plaintiff's dispute and reported the Account with a new lender name, instead of SoFi Lending Corp, it now appeared as SoFi Bank National with past due balance of $47,488 and a charged off status.

81.    The Equifax dispute results dated May 18, 2022, stated that "as a result of a dispute you submitted, the account . . . was removed from your Equifax credit file.  The company that furnished the account information recently requested to have the account information reinserted on your Equifax credit file and submitted a certification that the account belongs to you and the information below is complete and accurate.  As a result, and based on this certification, Equifax has reinserted the account on your Equifax credit file, as reported to us by the company."

82.    Equifax was unreasonable in its reliance on the "certification" by SoFi, which is nothing more than an electronically ticked box.

83.    Because the name of the furnisher had changed, Equifax had reason to believe that the reinsertion was, at the very least, a result of the transfer of the

fraudulent account from SoFi Lending Corp. to SoFi Bank.

84.    Equifax has experience in other cases where SoFi had verified accounts that were opened due to identity theft and its lax policies and procedures.

85.    Equifax had more than enough information, including the police report and the notice from the consumer that the account did not belong to her, in addition the default on the unsecured loan, to be suspicious and to require more than a mere electronic certification to ignore the Plaintiff's dispute.   Under the circumstances, Equifax's decision to merely parrot the information supplied by SoFi was unreasonable.

86.    On June 1, 2022, Plaintiff attempted to access her free Equifax report on www.annualcreditreport.com, but was not able to get the report.  She requested a copy of her consumer disclosure over the phone.

87.    On or around June 7, 2022, Plaintiff mailed another written dispute to Equifax attaching a copy of her consumer report with the fraudulent items circled, a copy of her Identity Theft Report and proof of her identity as the substantive information. She wrote the dispute using the instructions she found on the Federal Trade Commission website.

88.    On or around June 20, 2022, Equifax sent a letter to Plaintiff informing her that it was not going to block the Account as she had requested and that she needed to provide proof of her identity, the specific information that is the result of

the identity theft, and a copy of her complete and submitted Identity Theft Report with the Federal Trade Commission or Police report regarding the identity theft, which she had done

89.     On July 8, 2022, Equifax responded to Plaintiff's dispute and though it reported that it had deleted the SoFi Lending Corp. tradeline, it verified that the SoFi Bank account "belongs to you."

90.     Equifax continued to report the Account as $47,488 charged off, that there was a temporary update freeze on the file, that no payments had ever been made, and that it had been 90 days past due before being charged off.

91.     As a direct and proximate result of Equifax's conduct, the Plaintiff has suffered injuries including but not limited to publication of the false information to third parties; publication of the Plaintiff's name and other identifying information in response to request from third parties; lost time and wages over one hour due to the time consuming nature of the dispute process in which she repeatedly engaged in an attempt to correct the false reports; damage to her creditworthiness and credit score; physical symptoms and sickness such as insomnia, nausea, headaches; she decided to remove herself from the credit market;  embarrassment that she didn't want others to find out about the inaccurate Equifax reports; mental anguish worrying that she would never get her report fixed after the futility of disputing.

## Experian's Illegal Conduct

92.     On or around March 7, 2022, Plaintiff sent a dispute letter to Experian regarding the Account (#PL73) and explaining that the Account did not belong to her and that it was a result of identity theft.

93.     Thereafter, on or about May 8, 2022, Experian sent Plaintiff a letter explaining that as a result of its reinvestigation, the SoFi Lending Corp. Account had been deleted.

94.     On or around May 18, 2022, after Experian had deleted the Account, Experian sent Plaintiff a letter entitled "Dispute Results."

95.     Plaintiff's "Outcome: Updated – Information on this item has been updated.  Please review your report for the details."

96.     The Account details = the Account April 2022 Status was the Account had been charged off, $47,488 was written off, $47,488 was past due 90 days as of March 2022, and the Account had been purchased by another lender.

97.     On or around June 7, 2022, Plaintiff submitted another dispute to Experian using a sample she got from the FTC website.  She attached a copy of her consumer report with the fraudulent items circled a copy of her Identity Theft Report and proof of her identity as the substantive information. She also requested that Experian block the fraudulent Account information.

98.     On or around June 16, 2022, Experian responded to Plaintiff's dispute and reported the outcome was that the Account was "Verified and Updated – The

information you disputed has been verified as accurate; however, information unrelated to your dispute has been updated."

99.    The status as of June 2022 was that the Account was "closed," "$47,488 written off," "purchased by another lender," and 90 days past due as of March 2022.

100.    On or around July 4, 2022, Experian sent a dispute results that were the same in all material respects to the June 16, 2022, results, verifying and refusing to delete the Account.

101.    Because the name of the furnisher had changed, Experian had reason to believe that the reinsertion of the disputed Account was, at the very least, a result of the transfer of the fraudulent Account from SoFi Lending Corp. to SoFi Bank.

102.    Experian has experience in other cases where SoFi had verified accounts that were opened due to identity theft and its lax policies and procedures.

103.    Experian had more than enough information, including the police report and the notice from the consumer that the Account did not belong to her, in addition the default on the unsecured loan, to be suspicious and to require more than a mere automated response to overcome the Plaintiff's dispute.  Under the circumstances, Experian's decision to merely parrot the information supplied by SoFi was unreasonable.

104.    As a direct and proximate result of Equifax's conduct, the Plaintiff has suffered injuries including but not limited to publication of the false information to

third parties; publication of the Plaintiff's name and other identifying information in response to request from third parties; lost time and wages over one hour due to the time consuming nature of the dispute process in which she repeatedly engaged in an attempt to correct the false reports; damage to her creditworthiness and credit score; physical symptoms and sickness such as insomnia, nausea, headaches; she decided to remove herself from the credit market; embarrassment that she didn't want others to find out about the inaccurate Equifax reports; mental anguish worrying that she would never get her report fixed after the futility of disputing.

105.   Experian's conduct is especially egregious because it has represented to Courts that it will correct inaccurate information when disputed by consumers, especially consumers that supply documentation.

## **Furnishers' Illegal Conduct**

106.   Upon information and belief, the CRAs forwarded the information and disputes to SoFi Lending Corp. and to SoFi Bank (collectively "SoFi") using an electronic verification system set up by the CRAs to enforce an automated system so to nominally comply with the FCRA but in reality, to merely process disputes without truly investigating them

107.   Upon information and belief, by the time SoFi received the automated disputes from the CRAs, it already had actual knowledge that it had been defrauded by someone pretending to be the Plaintiff, yet it had not only made the negative,

false reports to the CRAS, it had also attempted to wrongfully collect money from Plaintiff.

108.   Because the Account was opened in the amount of $45,000 and no payments had ever been made on it, SoFi had more than enough reason to suspect that it had been defrauded even before receiving identity theft documentation from the innocent consumer.

109.   Upon information and belief, SoFi knows that when an unsecured loan in the amount of $45,000 is made and immediately goes into default, it is likely the result of identity theft or other fraud on the bank.

110.   Upon information and belief, SoFi had been defrauded by someone other than the Plaintiff but shifted all responsibility for its own negligence in giving money to a fraudster from itself onto the Plaintiff, who was innocent, thus willfully compounding the injuries it visited upon the Plaintiff.

111.   Despite knowing that Plaintiff did not owe it any money, SoFi reported the loan and delinquency to the CRAs.

112.   Despite knowing that Plaintiff did not owe the money, SoFi attempted to collect money from the Plaintiff that she did not owe.

113.   When SoFi received Plaintiff's disputes from the CRAs, upon information and belief, it did not conduct a meaningful investigation into the Account but rather merely conducted a data conformity check to see that the

22

information it had in its computer system – the same system that generate the wrong information in the first place – matched the information in the ACDV.

114.   It was unreasonable for SoFi to fail to conduct a thorough and meaningful investigation of the Plaintiff's bona fide disputes.

115.   Despite knowing that the Plaintiff did not owe the money, SoFi fraudulently sold and/or transferred the alleged defaulted loan to United Collection, LVNV, and Resurgent to collect from Plaintiff.

### Debt Collectors' Illegal Conduct

116.   Upon information and belief SoFi, United Collection, LVNV, and Resurgent contacted the Plaintiff repeatedly, by telephone, by mail, or both, in order to collect a debt that the Plaintiff did not owe.

117.   Due to the repeated contacts by Defendants, together with the CRAs refusal to correct her consumer reports, the Plaintiff worried that she was going to be liable to repay the Account even though she did not open the Account.

118.   As a result of Defendants' conduct, Plaintiff has sustained injuries resulting in actual damages including but not limited to being put in actual fear of having to pay money to she didn't owe to get debt collectors to stop contacting her and reporting the debt to the CRAs.

119.   She has suffered humiliation, fear, embarrassment, anguish, and emotional and mental pain as a result of having the debt she doesn't owe the subject

of many contacts from debt collectors, causing her to be worried her children would think that she had defaulted on a loan.

120.   Plaintiff had to engage a lawyer to defend herself from the Debt Collectors.

121.   The Debt Collectors engaged in illegal and unfair debt collection practices by attempting to collect a debt that was not expressly authorized by an agreement creating the debt or permitted by law.

122.   The Debt Collectors engaged in illegal, false, and misleading representations about the legal status of a debt by attempting to collect a debt that was not owed.

123.   As a result of the Debt Collectors conduct, the Plaintiff suffered injuries including the mental anguish resulting from the real fear that she would be forced to pay off over $47,488; invasion of her privacy; economic damages in having to engage a lawyer; physical injuries and sickness that resulted from emotional distress of being pursued by debt collectors for a loan she never applied for or received.

124.   The inaccurate reporting by CRA Defendants has caused Plaintiff's credit file to be severely damaged.

125.   Plaintiff has suffered monetary damages because Plaintiff cannot obtain credit —or better credit terms— which she needs and which she otherwise qualifies for.

24

126.   Plaintiff applied for a loan with Marcus by Goldman Sachs on or around October 22, 2021, and was denied due to the inaccurate reporting on Plaintiff's Trans Union consumer report.

127.   Plaintiff applied for a loan with MetaBank on or around November 5, 2021, and was denied due to the inaccurate reporting on Plaintiff's consumer reports.

128.   Plaintiff has taken herself out of the credit market because of the futility of applying for credit when she knows that despite her disputes and actual knowledge that the debt does not belong to her, the CRAs and debt collectors have refused to correct their illegal behavior.

129.   The CRAs and debt collector Defendants been on notice for years that SoFi's lending practices are lax and subject of other lawsuits involving identity theft.

130.   Plaintiff has done everything she is required to do and can do to get the CRAs to correct their false reporting about her. The only option Plaintiff or any consumer has after refusal to correct a false report is to file a lawsuit under the FCRA.

131.   Even though a Plaintiff may supply additional information and provide a 100-word statement about the disputed account, the reality is that once the furnisher has provided a certification verifying the false information, the CRAs won't correct it.

132.   A 100-word statement does nothing to improve a credit score, correct

propriety scoring models, alter scoring algorithms, or to impact trended data that users of consumer reports consider when making decisions based on the consumer reports. It is basically useless to a consumer who has a bona fide dispute with the results of the investigation.

133. Neither the CRAs, nor SoFi, nor the Debt Collectors have adopted policies and procedures to correct their failure to use reasonable procedures to assure the maximum possible accuracy of the Plaintiff's account once they are all on notice of the inaccuracy.

134. Neither the CRAs, nor SoFi, nor the Debt Collectors have conducted reasonable investigations or reinvestigations of the accuracy of the disputed Account because they have only made *un*reasonable data conformity checks.

## COUNT I
### Violation of the FCRA, 15 U.S.C. §§ 1681e(b) and 1681i
### against Equifax Information Services, LLC; Experian Information Solutions, Inc.; Trans Union LLC
### (collectively, "CRA Defendants")

135. Plaintiff relies on the facts described in the above paragraphs of this Complaint as the basis for her claims against the CRA Defendants and SoFi.

136. The FCRA requires a credit reporting agency to follow reasonable procedures to assure maximum possible accuracy of the information it reports about consumers. This includes when it first receives information from a furnisher and includes it in a consumer's report and after it receives a consumer dispute.

137.   A CRA must have a valid reason to believe that the information it receives from a furnisher and puts in a consumer's report is maximally accurate.

138.   Upon receiving a consumer dispute that information being reported is inaccurate, a CRA must promptly conduct a reinvestigation with respect to the disputed information.

139.   At a minimum, the CRA must transmit the dispute and all relevant documents to the furnisher so that the furnisher may investigate the dispute in addition to the CRA's requirement to reinvestigate. 15 U.S.C. § 1681i(a)(2)(A). However, a reasonable reinvestigation of the Plaintiff's disputes required much more than merely transmitting the dispute to the furnisher.

140.   A CRAs duty to reinvestigate is a grave responsibility that requires more than merely parroting what the furnisher is reporting to it.

141.   A reinvestigation means the same thing as an investigation, requiring a CRA to conduct a searching and meaningful inquiry into the dispute.

142.   Under the circumstances in this case, it was not reasonable for the CRAs to merely rely on the automated ACDV verification and reinsertion of the fraudulent Account from the furnisher because there was indicia within the report itself that the Account was fraudulent.

143.   CRA Defendants failed to employ and follow reasonable procedures to assure maximum possible accuracy of Plaintiff's credit report, information, and file,

in violation of 15 U.S.C. § 1681e(b).

144. The CRAs failed to conduct reasonable reinvestigations. 15 U.S.C. § 1681i(a)(1)(A).

145. CRA Defendants failed to maintain procedures designed to prevent the reappearance in a consumer's file, and in consumer reports on the consumer, of information that was deleted, in violation of 15 U.S.C. § 1681i(5)(C).

146. Because the Plaintiff never entered any agreement to encumbered herself on a SoFi loan, the CRA Defendants could not have possibly verified that the Account was accurate. Therefore, the CRA Defendants failed to delete the Account and provide the notices required under 15 U.S.C. § 1681i(5)(B)(ii)-(iii).

147. As a result of this conduct, action, and inaction, the Plaintiff suffered injuries resulting in actual damages described throughout this Complaint.

148. Experian's, Equifax's, and Trans Union's conduct, actions, and inaction were willful, rendering them each liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, Defendants were negligent, entitling the Plaintiff to recover under 15 U.S.C. § 1681o.

149. The Plaintiff is entitled to recover actual damages, statutory damages, punitive damages, costs, and her attorney's fees from the Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 15 U.S.C. §

1681o.

## COUNT II
### Violation of the FCRA, 15 U.S.C. § 1681s-2(b)
### SoFi Lending Corp., and SoFi Bank, N.A. (together, "SoFi")

150.   The FCRA requires furnishers such as SoFi, either after receiving notice directly from the consumer or from a credit reporting agency that a consumer disputes information that is being reported by that furnisher, to conduct an investigation with respect to the disputed information.

151.   At a minimum, a reasonable investigation includes (a) reviewing all relevant information, (b) reporting the results of the investigation to the credit reporting agency, and (c) if the investigation reveals that the information is incomplete or inaccurate, reporting those results to all other credit reporting agencies to which the furnisher has provided the inaccurate information.

152.   Defendant SoFi failed to conduct a reasonable investigation following receipt of no less than nine disputes made through the CRAs, making it liable to the Plaintiff under 15 U.S.C. § 1681s-2(b).

153.   Defendant SoFi has knowingly and willfully provided inaccurate information to CRA Defendants about the Plaintiff because the Plaintiff did not enter any agreement to encumber herself on the Account.

154.   SoFi had sufficient information to know that the Plaintiff was not liable for the Account or to otherwise verify that she entered an agreement with SoFi for a

$45,000 unsecured loan.

155.   The Plaintiff did not ask to be solicited, she did not ask for the loan, she did not bind herself in an enforceable contract, and she had no knowledge of the Account until long after the Account was in default.

156.   SoFi allowed itself to be defrauded by its own marketing, solicitation, and lending practices.

157.   Upon information and belief, SoFi received ACDVs from the CRAs and, if it did anything, it merely performed a perfunctory data conformity check within its own systems instead of investigating the identity theft dispute.

158.   It was unreasonable for SoFi to verify and reinsert the Account after it had been notified that the Account was not the Plaintiff's.

159.   Sofi's conduct was a direct and proximate cause, as well as a substantial factor, in causing serious injuries, damages and harm to Plaintiff that are outlined more fully above, and as a result, SoFi is liable to compensate Plaintiff for the full amount of statutory, actual, and punitive damages, along with attorneys' fees and costs, as well as other such relief, permitted by 15 U.S.C. §§ 1681n and 1681o.

160.   As a result of the above-described violations Plaintiff has sustained damages including loss of the opportunities to obtain credit or better credit conditions, emotional distress, and mental and physical pain.

161.   Because SoFi was aware that its lending practices were so lax that it

allowed itself to be defrauded by an imposter, and because it continuously shifted the responsibility to the innocent Plaintiff rather than take responsibility itself, SoFi's violation of the FCRA was willful and therefore Plaintiff is entitled to statutory and punitive damages.

### COUNT III
### Violations of the FDCPA, 15 U.S.C. § 1692
### against United Collection Bureau, Inc.; LVNV Funding; and Resurgent
### (collectively "Debt Collectors")

162.   Plaintiff relies on the facts set forth in the Complaint as the basis for the claims against the Debt Collectors.

163.   The FDCPA is a comprehensive regulatory scheme that Congress enacted to eliminate abusive, deceptive, and unfair debt collection practices by debt collectors and to promote consistent state action to protect consumers against debt collection abuses. 15 U.S.C. §§ 1692(a), (e).

164.   When Congress enacted the FDCPA in 1977, Congress had found that abusive debt collection practices harmed consumers by, among other things, increasing personal bankruptcy, marital instability, loss of employment, and invasion of privacy.

165.   Defendants United Collection, LVNV, and Resurgent identified themselves as debt collectors in the collection letter sent to Plaintiff.

166.   Defendants United Collection, LVNV, and Resurgent's misconduct was deliberately false, deceptive, misleading, unfair, unconscionable, and coercive,

and resulted in the pending unlawful extraction of money from Plaintiff.

167.   Defendants United Collection, LVNV, and Resurgent violated 15 U.S.C. §§ 1692e(2)(a), 1692(10) by making false and deceptive misrepresentations in the collection of the SoFi Account.

168.   Defendants United Collection, LVNV, and Resurgent violated 15 U.S.C. §§ 1692f by engaging in collection of the SoFi Account, which was not expressly authorized by an agreement creating the debt between the Plaintiff and SoFi.

169.   Upon information and belief, Defendants United Collection, LVNV, and Resurgent utilize these false, deceptive, misleading, unfair, unconscionable, and coercive tactics as a matter of course when attempting to collect debts from consumers such as Plaintiff, despite the fact that Defendants United Collection, LVNV, and Resurgent knew or should have known that the debt was not a valid debt, especially when Plaintiff sent CRA Defendants disputes regarding the debt which were then, upon information and belief, forwarded to Furnisher SoFi and then to United Collection, LVNV, and Resurgent.

170.   Defendants United Collection, LVNV, and Resurgent's misconduct was intentional. Defendants do not maintain procedures reasonably adapted to avoid such conduct, but rather intends the conduct.

171.   The misrepresentations were made knowingly and with the intent to

deceive and coerce the least sophisticated consumer. 15 U.S.C. 1692e(2)(A).

172.   The misconduct was done intentionally with the purpose of coercing Plaintiff to pay an alleged debt that was not owed.

173.   As a result of the foregoing violations of the FDCPA, Plaintiff suffered injuries in fact, including but not limited to the above-referenced economic damages, as well as extreme emotional distress, embarrassment, humiliation, frustration, lost sleep, loss of time and need to hire counsel, and interference with usual activities.

174.   Defendants are liable to Plaintiff for actual damages, statutory damages, costs, and attorney fees.

## COUNT IV
### Violation of the CCCRA, Cal. Civ. Code § 1785.25
### against SoFi

175.   Plaintiff relies on the facts described more fully in this Complaint that form the basis of Count IV.

176.   California Civil Code § 1785.25(a) states that a "person shall not furnish information on a specific transaction or experience to any consumer credit reporting agency if the person knows or should know the information is incomplete or inaccurate."

177.   California Civil Code § 1785.25(b) states that a furnisher that determines a report to a credit reporting agency is not accurate or complete shall promptly notify the consumer reporting agency of that determination and provide

corrections to the consumer reporting agency that is necessary to make the information complete and accurate.

178.   California Civil Code § 1785.25(c) provides that if the completeness or accuracy of any information on a specific transaction or experience provided to a consumer reporting agency is disputed by the consumer, the furnisher may not continue reporting the information unless it provides a notice to the consumer reporting agency that the information is disputed by the consumer.

179.   Defendant SoFi, by and through its agents and employees, violated the provisions of the California Consumer Credit Reporting Agencies Act by furnishing information about the Plaintiff to CRA Defendants although Defendant SoFi knew, or consciously avoided knowing, that the information was inaccurate.

180.   The Plaintiff was injured as a result of SoFi's conduct causing her to suffer economic, emotional distress, mental anguish, physical injury and sickness as described in this Complaint.

181.   Based on these violations of California Civil Code § 1785.25, Plaintiff is entitled to the remedies afforded by California Civil Code § 1785.31, including actual damages, attorney's fees, pain and suffering, injunctive relief, and punitive damages in an amount not less than $100.00 nor more than $5,000.00, for each violation as the Court deems proper.

**COUNT V**

34

## Violation of the RFDCPA, Cal. Civ. Code § 1788
## against Debt Collectors and SoFi

182.   Plaintiff relies on the facts described more fully in this Complaint that form the basis of Count V.

183.   Defendants United Collection, LVNV, SoFi and/or Resurgent violated the RFDCPA. United Collection, LVNV, SoFi and Resurgent's violations include, but are not limited to, the following:

a.   Violating Cal. Civ. Code § 1788.11(d) by causing a telephone to ring repeatedly or continuously to annoy the person called;

b.   Violating Cal. Civ. Code § 1788.17(e) by "communicating, by telephone or in person, with the debtor with such frequency as to be unreasonable and to constitute harassment to the debtor under the circumstances."

c.   Violating Cal. Civ. Code § 1788.17 by collecting or attempting to collect a consumer debt without complying with the provisions of Sections 1692b to 1692j, inclusive, of . . . Title 15 of the United States Code (Fair Debt Collection Practices Act).

i.   Violating Cal. Civ. Code § 1788.17 by violating 15 U.S.C. § 1692d by engaging in conduct, the natural consequence of which is to harass, oppress or abuse any

person in connection with the collection of the alleged debt; and

ii.    Violating Cal. Civ. Code § 1788.17 by violating 15 U.S.C. § 1692d(5) by causing Plaintiff's phone to ring or engaging Plaintiff in telephone conversations repeatedly;

iii.    Violating Cal. Civ. Code § 1788.17 by violating 15 U.S.C. § 1692f by using unfair or unconscionable means in connection with the collection of an alleged debt

184.    United Collection texted Plaintiff in order to collect the alleged debt.

185.    SoFi is the original creditor of the alleged debt.

186.    The Rosenthal Act applies to the original creditors.

187.    SoFi sold the alleged debt to debt collection agencies, United Collection, LVNV and Resurgent.

188.    SoFi attempted to collect a debt from Plaintiff that she did not owe.

189.    United Collection, LVNV, SoFi and Resurgent's acts, as described above, were done intentionally with the purpose of coercing Plaintiff to pay the alleged debt.

190.    The Plaintiff was injured as a result of United Collection, LVNV, SoFi and Resurgent's conduct, causing her to suffer economic, emotional distress, mental anguish, and physical injuries and sickness as described in this Complaint.

191.   As a result of the foregoing violations of the RFDCPA, United Collection, LVNV, SoFi and Resurgent are liable to Plaintiff for actual damages, statutory damages, and attorneys' fees and costs.

**Count VI**
**Violation of Cal. Civ. Code § 1785.16.2 and § 1785.16(k)**
**against CRA Defendants and SoFi.**

192.   The Plaintiff relies on the facts more fully described in this Complaint that form the basis of Count VI.

193.   California Civil Code § 1785.16.2(a) provides that: "No creditor may sell a consumer debt to a debt collector, as defined in 15 U.S.C. Sec. 1692a, if the consumer is a victim of identity theft, as defined in Section 1798.2, and with respect to that debt, the creditor has received notice pursuant to subdivision (k) of Section 1785.16 or paragraph (2) of subdivision (g) of Section 1788.18."

194.   California Civil Code § 1785.16(k) provides  in relevant part that: "If a consumer submits to a credit reporting agency a copy of a valid police report, or a valid investigative report made by a Department of Motor Vehicles investigator with peace officer status, filed pursuant to Section 530.5 of the Penal Code, the consumer credit reporting agency shall promptly and permanently block reporting any information that the consumer alleges appears on his or her credit report as a result of a violation of Section 530.5 of the Penal Code so that the information cannot be reported."

195.   California Civil Code § 1785.16(k) also provides that the CRAs "shall promptly notify the furnisher of the information that the information has been so blocked," the provides information on what the furnisher can do in order to unblock the reporting.

196.   Plaintiff reported the identity theft to the police department and acquired a police report which was more than an automated form.

197.   Plaintiff provided possible suspects to the police department to the best of her abilities.

198.   Plaintiff provided all of the information that was required of her to complete the police report and worked with the police department to the best of her abilities.

199.   Plaintiff gave substantive and meaningful affidavits to assist law enforcement, furnisher SoFi, and Defendant CRAs.

200.   Plaintiff submitted a copy of her valid police report and affidavit to Defendant CRAs.

201.   Upon information and belief furnisher SoFi received Plaintiff's police reports and dispute from Defendant CRAs and chose to continue collecting the alleged debt.

202.   Defendant CRAs and Defendant SoFi violated the provisions of § 1785.16(k) by refusing to block the reporting of any information Plaintiff alleged

appeared on her consumer report as a result of identity theft.

203.   Defendant CRAs notified furnisher SoFi of the identity theft.

204.   Defendant SoFi violated the provisions of § 1785.16.2 by selling the alleged debt to debt collectors United Collection, LVNV and Resurgent.

205.   Defendant SoFi knew or should have known that Plaintiff was a victim of identity theft and that under such circumstances, it was governed by California law to not report, sell, or transfer the alleged debt.

206.   Defendant SoFi ignored or disregarded the dispute that it received from CRA Defendants that the alleged debt it was attempting to collect was subject to an identity theft claim.

207.   Plaintiff was injured as a result of CRA Defendants and SoFi's conduct, causing her to suffer economic injury, emotional distress, mental anguish, physical injury and sickness as described in this Complaint.

208.   Based on these violations of California Civil Codes §§ 1785.16.2 and 1785.16(k), Plaintiff is entitled to the remedies afforded by California Civil Code § 1785.31, including actual damages, attorney's fees, pain and suffering, injunctive relief, and punitive damages in an amount not less than $100.00 nor more than $5,000.00, for each violation as the Court deems proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Honorable Court

enter judgments against Defendants for the following:

A.    Declaratory judgment that CRA Defendants violated the FCRA, 15 U.S.C. § 1681e(b), § 1681i;

B.    Declaratory judgment that United Credit, LVNV, Resurgent violated the FDCPA, 15 U.S.C. § 1692;

C.    Declaratory judgment that CRA Defendants and SoFi violated the CCCRA, Civ. Code § 1785.25;

D.    Declaratory judgment that United Credit, LVNV, and Resurgent violated the RFDCPA, Cal. Civ. Code § 1788;

E.    An award of actual damages pursuant to 15 U.S.C. §§ 1681n(a)(1) or 1681o(a)(1); 15 U.S.C. 1692k(a)(1); Cal. Civ. Code § 1788.30(b); Cal. Civ. Code § 1785.31;

F.    An award of statutory damages pursuant to 15 U.S.C. §§ 1681n(a)(1) and 1681o(a)(1); 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C); 15 U.S.C. 1692k; Cal. Civ. Code § 1785.31;

G.    Statutory damages of $1,000.00 pursuant to Cal. Civ. Code §1788.30(b);

H.    An award of punitive damages, as allowed by the Court pursuant to 15 U.S.C. § 1681n(a)(2) and Cal. Civ. Code § 1785.31;

I.    Costs and reasonable attorneys' fees pursuant to 15 U.S.C. §

1681n(a)(3) and § 1681o(a)(2); 15 U.S.C. 1692k(3); Cal. Civ. Code §1788.30(c);

J.    Actual damages, costs and attorneys' fees, statutory punitive damages, and injunctive relief pursuant to Cal. Civ. Code § 1785.16.2 and 1785.16(K); and

K.    Such other and further relief as this Honorable Court may deem just and proper, including any applicable pre-judgment and post-judgment interest, and/or declaratory relief.

## JURY DEMAND

Plaintiff hereby demands jury trial on all issues so triable.

RESPECTFULLY SUBMITTED this 6th day of January 2023,

*/s/Youssef H. Hammoud*
Youssef H. Hammoud (SBN: 321934)
**Price Law Group, APC**
6345 Balboa Blvd., Suite 247
Encino, CA 91316
T: (818) 600-5596
F: (818) 600-5596
E: youssef@pricelawgroup.com
*Attorneys for Plaintiff,*
*Dolores Ronquillo*